**UNITED STATES of America**

v.

**Jose Oscar CALDERON, Defendant.**

**No. 99 CR, 869(DAB).**

United States District Court,
S.D. New York.

March 9, 2000.

Mary Jo White, United States Attorney, Leslie C. Brown, Assistant United States Attorney, of counsel, New York City, for plaintiff.

Leonard F. Joy, The Legal Aid Society, Federal Defender Division, Robert M. Baum, of counsel, New York City, for defendant.

*ORDER*

BATTS, District Judge.

Defendant is charged with having illegally reentered the United States, subsequent to deportation, in violation of 8 U.S.C. § 1326. He now seeks to dismiss the Indictment on the ground that venue is improperly laid within the Southern District of New York.

For the following reasons, the Court hereby DENIES Defendant's Motion to Dismiss.

## I. BACKGROUND

Defendant was deported on December 6, 1993. (Baum Aff. ¶ 2 & Ex. H.) On or about September 26, 1994, Defendant was apprehended by officials of the Immigration and Naturalization Services ("INS") at or near Douglas, Arizona. (Baum Aff. ¶ 3 & Ex. A.) At the time of his arrest, Defendant provided INS with a false name, country of origin, and date of birth. (Baum Aff. ¶ 4 & Ex. A.) Defendant was fingerprinted and apparently released on bail. (Baum Aff. ¶ 5 & Ex. B.)

Defendant allegedly requested that his deportation proceedings be transferred to New York.[1] (Tr. of Jan. 4, 2000, at 5.) On

1. It is unclear when or how the Defendant requested a transfer of the civil deportation proceedings to New York. None of the documentation appended to the Notice of Motion suggests either that Defendant's bail limits were extended to New York or that the civil

December 6, 1994, a notice was sent to Defendant at a New York address advising him of a deportation hearing that had been scheduled to commence on May 18, 1995, in Arizona. (Baum Aff. ¶ 6 & Ex. D.) Defendant did not appear at the scheduled hearing in Arizona. (Tr. of Jan. 4, 2000 at 4.)

On October 21, 1996, Defendant was interviewed by an INS agent at the 25th Police Precinct in New York City. (Baum Aff. ¶ 7 & Ex. E.) Defendant provided the INS agent with another false name and date of birth, but admitted that he had illegally entered the United States in September 1994. (Baum Aff. ¶ 6 & Ex. E.) As a result, a Warrant of Deportation was issued by the INS in New York on October 22, 1996. (Baum Aff.Ex. F.)

On May 7, 1997, while being interviewed by an INS official at Rikers Island, Defendant admitted for the first time to the INS that he had been previously deported and provided a correct name and date of birth. (Brown Aff.Ex. B.) Defendant's identity as a prior deportee was confirmed by a fingerprint check on June 4, 1997. (Baum Aff.Ex. J.)

The instant Indictment for illegal reentry was filed on September 2, 1999, just under five years from the date of Defendant's illegal reentry into Arizona.

Defendant now moves to dismiss the Indictment on the ground that venue is improperly laid within the Southern District of New York.

## II. DISCUSSION

Venue for illegal reentry is proper in any district in which "the violation may occur." 8 U.S.C. § 1329. Illegal reentry subsequent to deportation can be committed in any of three ways:[2] when a previously deported alien (1) "enters"; (2) "attempts to enter"; or (3) "is at any time found in" the United States. 8 U.S.C. § 1326(a).

The Second Circuit has expressly held that a violation of "found in" is not a continuing offense. *United States v. Rivera–Ventura*, 72 F.3d 277, 282 (2d Cir. 1995) (completeness of offense of being "'found in' the United States ... is somewhat more complex, since it depends not only on the conduct of the alien but also on acts and knowledge of the federal authorities"). However, a violation of § 1326 is not complete until "the authorities both discover the illegal alien in the United States, and know, or with the exercise of diligence typical of law enforcement authorities could have discovered the illegality of his presence." *Id.* Venue lies in the district in which the offense is completed. *Id.*

Defendant contends that even though he gave a false name, country of origin and date of birth when seized upon entering Arizona illegally, that because he was fingerprinted by INS authorities in Arizona, the Government should be charged with constructive knowledge of his illegal reentry status as well as his obvious illegal status. (Def.'s Mem. at 2–6.) Therefore, the Defendant contends that he was "found in" Arizona, and not the Southern District of New York. *Id.* The Government asserts that Defendant was "found in" the Southern District of New York on or around May 7, 1997, when Defendant first admitted to an INS official that he had illegally reentered the United States subsequent to a prior deportation. (Gov.'s Mem. at 2.)

deportation hearing was transferred to New York. Indeed, Exhibit D calls for a hearing in Arizona.

**2.** "The clear language in 8 U.S.C. Section 1326(a)(2) provides three separate occasions upon which a deported alien may commit the offense: 1) when one illegally enters the United States; 2) attempts to illegally enter the United States; or 3) when a deported alien is found at any time in the United States. The plain words of the statute set out discrete points in time when the crime may be committed." *United States v. Whittaker*, 999 F.2d 38, 42 (2d Cir.1993) (citing *United States v. Gonzales*, 988 F.2d 16, 18 (5th Cir.1993)).

Defendant in this case was not "found in" Arizona at the time of his initial arrest in September, 1994 because, although INS was aware of Defendant's physical presence, they were not aware that he had previously been deported.[3] "When an alien reenters the country by using an alias, or uses false identification, when his illegal presence in the United States is discovered, he is not identifiable and hence not 'found.'" *United States v. Herrera-Ordones*, 190 F.3d 504, 510 (7th Cir.1999). The fact that Defendant was fingerprinted does not suggest that the Government had constructive knowledge of Defendant's prior deportation. *United States v. Benco-mo-Castillo*, 176 F.3d 1300, 1304 (10th Cir. 1999) ("declin[ing] ... to second-guess the FBI's processing [of] suspects' fingerprints," notwithstanding "typical diligence" requirement of 8 U.S.C. § 1326).

In this case, the Defendant was "found", and the offense of illegal reentry complete, when INS agents in the Southern District of New York became aware, on May 7, 1997, that Defendant had previously been deported. Thus, venue properly lies in the Southern District of New York.

### III. CONCLUSION

Defendant's motion to dismiss based on improper venue is DENIED. The parties are directed to appear for a status conference on Monday, March 27, 2000, at 10:00 a.m.

SO ORDERED.

---

**3.** Defendant relies on *United States v. Hernandez*, 189 F.3d 785 (9th Cir.1999). However, *Hernandez* is distinguishable on its facts. The Government conceded that Hernandez had been "found in" Oregon in that the Government, in Oregon, knew that Hernandez had been previously deported, and therefore determined that he was subject to prosecution under 8 U.S.C. § 1326. *Id.* at 788. State law enforcement authorities, aware of Hernandez' status, then transported him to Washington. The United States Attorney's Office in Washington then made a subsequent decision to prosecute Hernandez there. *Id.* at 787, 788.

In the case at bar, the Government does not concede that Defendant was "found in" Arizona, (Gov.'s Mem. at 2), and it appears that there was no determination made in Arizona that Defendant was subject to prosecution under 8 U.S.C. § 1326. Further, it appears that Defendant came to New York on his own. (Baum Aff. ¶ 6; Tr. of Jan. 4, 2000 at 4–5.)